Argued and submitted June 19, affirmed September 10, petition for review denied December 23, 1997 (326 Or 234)

STATE OF OREGON,
*Respondent,*

*v.*

CAROL EMMA EDWARDS,
*Appellant.*

(94-4840-A-C-3; CA A90260 (Control))

STATE OF OREGON,
*Respondent,*

*v.*

RICHARD EARL EDWARDS,
*Appellant.*

(94-4840-B-C-3; CA A91076)
(Cases Consolidated)

945 P2d 553

Walter J. Todd argued the cause and filed the brief for appellants.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Chief Judge, and Leeson and Haselton, Judges.

HASELTON, J.

**HASELTON, J.**

In these consolidated cases, defendants appeal from various narcotics- and weapons-related convictions,[1] assigning error to the trial court's denial of their motions to suppress evidence seized pursuant to a search warrant. Defendants assert that, because the warrant included an incorrect address, it did not particularly describe the place to be searched, as required by ORS 133.565 and Article I, section 9, of the Oregon Constitution. We conclude that the warrant satisfied statutory and constitutional particularity requirements and, thus, affirm.

On October 6, 1994, Jackson County Narcotics Enforcement Team detective Jim Johnson executed an affidavit in support of an application for a warrant to search premises located in rural Jackson County, at "5482 W. Griffin Creek Road," and the persons of Jim Watson and Rich Edwards, for evidence relating to the possession, manufacture, and distribution of controlled substances. The affidavit described the subject premises as

> "a wood structure house, brown in color, and a barn located adjacent to the house, which is also brown in color. Further, there is a mobile home, off white in color, located on this same property and occupied by Jim Watson.

> "The property is further located by traveling south on Highway 99 to S. Stage Road. Turn right, (west), on S. Stage Road and travel to Griffin Creek Road. Turn left, (south), and travel to the intersection of Griffin Creek Road and W. Griffin Creek Road. Turn right, (west), and travel 2.5 miles to a dirt and gravel private driveway and turn right, (north). A tree on the right of the driveway has a 'No trespassing/No Hunting' sign posted on it. Go .3 miles on the dirt road until the road makes a 90 degree turn to the left, (west). At the intersection go straight through a metal gate where a large stack of bailed hay can be seen. That a map

---

[1] Defendant Carol Emma Edwards was convicted of keeping a place for keeping or selling controlled substances, ORS 475.993. Defendant Richard Earl Edwards was convicted of manufacture of a controlled substance, ORS 475.992(1), two counts of possession of a controlled substance, ORS 475.992(4), keeping a place for keeping or selling controlled substances, ORS 475.993, and unlawful possession of a short-barreled shotgun, ORS 166.272.

showing directions to said premises is attached to this affidavit and search warrant * * * and is incorporated herein by reference."

The affidavit further stated that Johnson had personally confirmed the directions set out in the affidavit as "directions to 5482 W. Griffin Creek Road" and that Johnson had confirmed other aspects of the description of the property.

Based on that application, a warrant issued for the search of the premises, the persons of Watson and Edwards, and outbuildings, "located at 5482 W. Griffin Creek Road." The warrant included a description of the premises, including a description of the location, identical to that set forth in the affidavit.

Jackson County officers subsequently executed the warrant, and seized, *inter alia*, a substantial quantity of marijuana. The premises searched conformed exactly to the physical description and location set out in the warrant *except* that the address of the searched residence was *5450* W. Griffin Creek Road, rather than 5482 W. Griffin Creek Road.[2] Notwithstanding the discrepancy in the address, the physical description of the property and the directions in the warrant corresponded *only* to the premises that were searched. That is, a person following those directions could arrive only at defendants' residence.[3]

Defendants were subsequently charged. Thereafter, they moved to controvert the good faith, accuracy, and truthfulness of the affiant on the basis of the incorrect address, and also moved to suppress the evidence seized pursuant to the warrant. In particular, defendants attempted to controvert Johnson's averment that he had personally confirmed the directions to, and address of, defendants' residence, by offering evidence, including photographs of signs leading to the property, showing defendants' address as 5450 W. Griffin Creek Road. Defendants further urged that suppression was required because the warrant, by virtue of the discrepancy or

---

[2] There is no evidence that, at the time the officers executed the warrant, they were aware that the address was different from that set out in the warrant.

[3] 5482 W. Griffin Creek Road is a real, nonfictitious address; there is, in fact, a residence at that address. However, that residence cannot be reached by following the directions set out in the warrant.

error in the address of the premises, did not particularly describe the place to be searched, as required by ORS 133.565 and Article I, section 9, of the Oregon Constitution. Defendants made a further, and related, argument that the warrant did not authorize a search of their residence because the warrant described a parcel of property on which they did not reside.

The state responded that the explicit and detailed directions to the premises, combined with the description of the residence and barn, were so specific—indeed, unique—that the statutory and constitutional particularity requirements were satisfied, notwithstanding the incorrect address.

The trial court denied defendants' motions to suppress. As germane to this appeal, the court made the following findings and conclusions:

"2. The search warrant stated the address was 5482 [West] Griffin Creek Road, Jackson County.

"3. The address is in fact *5450 W. Griffin Creek Road*, Jackson County.

"4. The search warrant gives explicit directions with exact mileage to the residence.

"5. The residence is located on acreage. There are no other residences on the parcel of land.

"6. A police officer following directions would only arrive at defendants' residence.

"* * * * *

"The directions in this particular case were so specific it is not reasonable to believe a police officer following the directions could have executed the search warrant at the wrong residence. The property is rural and there are no other residences in the immediate proximity of the residence."[4]

---

[4] Although the court made no explicit ruling on the motions to controvert, the state did not contest defendants' exception to the address in the warrant, and the court implicitly granted that portion of defendants' motions, as demonstrated by the court's findings in its order denying the motions to suppress. Further, in response to defendants' motions to controvert—although not at issue on appeal— the state conceded that other portions of the affidavit should be stricken, and the court did strike those portions.

Following a stipulated facts trial, defendants were convicted.

■      On appeal, defendants reiterate their arguments that suppression was required because the warrant's description of the premises did not satisfy the particularity requirements of ORS 133.565(2) and Article I, section 9, of the Oregon Constitution. ORS 133.565(2) provides:

> "The warrant shall state, or describe with particularity:
>
> "* * * * *
>
> "(b)   The name of the person to be searched, or the location and designation of the premises or places to be searched[.]"

Article I, section 9, provides:

> "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."[5]

■      As a general matter, we address the "subconstitutional"/statutory issues before reaching the constitutional issues. *See State v. Moylett*, 313 Or 540, 545, 836 P2d 1329 (1992). Here, however, it appears that the two merge. In *State v. Ingram*, 313 Or 139, 143, 831 P2d 674 (1992), the court held that ORS 133.565 implements the constitutional prohibition against general warrants, and, therefore, it is "at least as restrictive" as Article I, section 9. The court then proceeded to examine cases decided under Article I, section 9, for guidance in applying ORS 133.565. *Id.* at 144-46. Here, defendants do not suggest that there is any material difference between the particularity requirement of ORS 133.565(2) and that of Article I, section 9, and, at least in this context, we discern none. Consequently, for present purposes, we treat the two as being coextensive.

  *State v. Blackburn/Barber*, 266 Or 28, 511 P2d 381 (1973), frames our analysis. In *Blackburn/Barber*, the police

---

[5] *See also* ORS 133.585:

"The scope of search shall be only such as is authorized by the warrant and is reasonably necessary to discover the persons or things specified therein."

executed a warrant describing the place to be searched as "Apartment Number 2 in the basement of the residence at 240 South Davis Street, McMinnville, Oregon, said apartment having the letters ECURB on the door." However, the residence contained several basement apartments, one of which had the letters "ECURB" on the door, and another of which was labeled apartment "2." The officers searched both apartments. The trial court suppressed the evidence discovered during those searches, finding that the warrant did not describe the place to be searched with particularity. The Supreme Court affirmed as to Barbur—who resided in apartment 2—and reversed as to Blackburn—who resided in the apartment labeled "ECURB." The court held that the search of the apartment labeled "ECURB" was authorized and valid under the warrant, but the search of apartment 2 was not authorized and, therefore, was invalid.

In so holding, the court first described the purpose of the particularity requirement:

"[T]he aim of the requirement of particularity is to protect the citizen's interest in freedom from governmental intrusion through the invasion of his privacy. If the search warrant describes premises in such a way that it makes possible the invasion of this interest in privacy without the foundation of probable cause for the search, the warrant is too broad and therefore constitutionally defective.

"In testing a warrant for definiteness 'it is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain the identity of the place intended.' [*Steele v. United States*, 267 US 498, 503, 45 S Ct 414, 69 L Ed 757 (1925)]. The description must be sufficiently clear so that the property to be searched is recognizable from other neighboring properties. If, however, a warrant purporting to authorize a search is sufficiently ambiguous that it is impossible to identify with a reasonable degree of certainty the particular premises authorized to be searched, the warrant may not be executed and any search pursuant to it is illegal, whether of the premises actually intended or not, because of the danger that the privacy of unauthorized premises will be invaded." *Id*. at 34-35 (footnotes omitted).

Applying that principle, the court concluded:

> "[T]here could be no real doubt as to which of the premises was intended by the warrant and that it could be ascertained with reasonable certainty. No one could have made a mistake or been confused about a word like ECURB, but anyone could easily have made a mistake about a numeral. ECURB was a significant and more unmistakable guide than a mere number." *Id*. at 35-36.

This case is closely analogous to *Blackburn / Barber*. Here, as there, the warrant purported to authorize the search of one residential property but described two separate residences. The warrant provided an address for one residence and a precise description, including the directions, for another. Although the address was incorrect, there could be no reasonable question about which residence the warrant authorized to be searched. As the trial court found, "a police officer following [the warrant's] directions would only arrive at defendants' residence." Furthermore, it is uncontroverted that the physical description of the premises—including the color of the house and barn, the placement of the tree holding the "No Trespassing/No Hunting" sign, the metal gate, and the bales of hay—corresponded exactly to the searched premises. As in *Blackburn / Barber*, that exacting description was "a significant and more unmistakable guide than a mere number." 266 Or at 36. Thus, the warrant was not so "ambiguous that it [was] impossible to identify with a reasonable degree of certainty the particular premises authorized to be searched." *Id*. at 35.

*State v. Davis*, 106 Or App 546, 809 P2d 125 (1991), and *State v. Burton / Cunningham*, 121 Or App 508, 855 P2d 1124 (1993), *rev den* 318 Or 351 (1994), which defendants invoke, are materially distinguishable. Given the generic descriptions in those cases, an officer could not ascertain, with any reasonable degree of confidence, whether the place to be searched was one that conformed to the address in the warrant, but not to the generic description, or one that conformed to the generic description, but not to the address.[6]

---

[6] For example, although the warrant in *Burton* provided a physical description of the place to be searched, including two photographs of the house, we emphasized that "[t]he physical description and picture of the house were not remarkable." 121 Or App at 512.

That was not true here. Given the detailed description here—a description which corresponded to only one premises in the world—the officers executing the warrant could identify with a reasonable degree of certainty the premises authorized to be searched. The trial court did not err in denying the motions to suppress.

Affirmed.