Argued and submitted November 12, 1998, affirmed on appeal; vacated and remanded in part and affirmed in part on cross-appeal May 12, 1999

## STATE OF OREGON,
*Respondent,*

*v.*

## DOUGLAS R. KNIGHT,
*Appellant.*

(961503M; CA A97417 (Control))

## STATE OF OREGON,
*Respondent - Cross-Appellant,*

*v.*

## DOUGLAS R. KNIGHT,
*Appellant - Cross-Respondent.*

(96CR0410; CA A97418)

## STATE OF OREGON,
*Respondent,*

*v.*

## DOUGLAS R. KNIGHT,
*Appellant.*

(96CR0411; CA A97425)
(Cases Consolidated)

981 P2d 819

R. K. Cue argued the cause for appellant - cross-respondent. On the opening brief was Mark Burkhalter.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent - cross-appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Brewer,* Judges.

BREWER, J.

---

* Brewer, J., *vice* Warren, P. J., retired.

**BREWER, J.**

Defendant appeals his convictions on three counts of first-degree burglary, ORS 164.225, one count of second-degree theft, ORS 164.045, 11 counts of a stalking order violation, ORS 163.750, and five counts of contempt, ORS 33.065. He seeks a new trial based on the trial court's refusal to grant him a continuance. He also assigns error to his conviction on one of the burglary counts, contending that the state failed to make a *prima facie* case against him. The state cross-appeals, asserting that the trial court sentenced defendant improperly. We affirm on appeal and remand for resentencing on cross-appeal.

Defendant's convictions resulted from a series of contacts he had with his former spouse, Rhonda Knight, between July 22 and October 8, 1996. During that period, defendant was subject to a stalking protective order that prohibited him from contacting Rhonda. Despite the order, defendant telephoned and sent notes and flowers to her on several occasions. On July 30, 1996, at 8:00 a.m., defendant entered the victim's residence while she was present. He told her that his car had broken down nearby and that he needed to use the bathroom to wash his hands. He then told her that he wanted to stay and talk but left when she asked. After he left, she unsuccessfully attempted to call the police and later discovered that the telephone had been unplugged. Defendant was convicted of first-degree burglary (entering and remaining in the victim's dwelling with the intent to commit the crime of violating a court's stalking protective order therein), and violating the stalking order as a result of that incident.

Approximately two hours after the first incident on July 30, defendant returned to the residence. He again entered without permission. He ordered Rhonda to drop the stalking order. After 20 minutes, he left. That incident also resulted in convictions for first-degree burglary and violation of a stalking order.

Just over a week later, defendant had parenting time with his three daughters for the weekend. (The children resided with their mother.) On the evening of August 9, he

drove them to Rhonda's house. When they arrived, he asked his 14-year-old daughter to go into the house to retrieve her mother's jewelry box. She complied. Defendant did not enter the residence at any time that night. Nevertheless, he was charged with and convicted of a further violation of the stalking order, first-degree burglary, second-degree theft, and contempt of court. During the week following the jewelry box incident, defendant initiated several additional contacts with Rhonda Knight that resulted in additional charges and eventual convictions for violation of the stalking order and contempt.

Trial began on January 15, 1997. At the outset, defendant's attorney requested a continuance. He stated that he was unprepared because the state had not provided timely discovery. The court denied defendant's motion. Defendant renewed the motion before the jury was impaneled, and the court again denied it. Defendant was found guilty and held in contempt, as previously indicated.

At sentencing, the state argued that the 8:00 a.m. burglary on July 30, 1996, should be treated as part of defendant's "criminal history" for purposes of sentencing on the 10:00 a.m. burglary on the same day, thus enhancing the second burglary to gridblock 8-D on the criminal history scale. The trial court disagreed and sentenced both offenses within gridblock 8-I. In addition, when sentencing defendant on the August 9 burglary conviction, the trial court treated the two July 30 burglaries as a single conviction for purposes of calculating defendant's criminal history.

■ ■ Defendant first assigns error to the trial court's denial of his motion for a continuance. We review the trial court's denial of such a motion for abuse of discretion. *State v. Moore*, 324 Or 396, 410, 927 P2d 1073 (1996); *State v. Parker*, 317 Or 225, 231, 855 P2d 636 (1993). Defendant argues that the right to counsel includes the right to *effective* counsel and cites *Powell v. Alabama*, 287 US 45, 53, 53 S Ct 55, 77 L Ed 158 (1932). He claims that the denial of a continuance thwarted his counsel's effectiveness for two major reasons: (1) because the state did not disclose its expert witnesses, two tapes of the defendant's statements, and a photograph until the day before trial, counsel could not adequately meet the

state's evidence; and (2) his attorney was unable to contact 10 defense witnesses before trial.

Under the circumstances presented here, we cannot say that the trial court abused its discretion or denied defendant adequate (or effective) representation by refusing to postpone the trial. Defendant's discovery problems were both minor and reasonably avoidable. The state made defendant's recorded statements available to his attorney for copying before trial. However, defendant's attorney did not provide a blank tape for copying. Defense counsel did not show that he was unable to provide a blank tape or otherwise procure the discovery before the day of trial. The state did not receive the photograph until the morning of trial and immediately turned it over to defense counsel. The court found that it was delivered late but that the issue was "not sufficient to postpone the trial." Furthermore, defendant does not show how his lack of access to his own statement and to the photograph prejudiced him.

■ Defendant also argues that the state's delay in disclosing its expert justified a continuance. The expert testified concerning the cycle of domestic violence in order to counter evidence that the victim continued to see the defendant despite his abusive behavior. The state's decision to call the witness was prompted by defendant's apparent plan to argue that the victim's occasionally accommodating behavior towards him justified his violation of the stalking order. That strategy was revealed shortly before trial as a result of defendant's tardy disclosure of his own witness list, including people who would testify about the ongoing contact. In addition, the expert was scheduled to testify near the end of a multiple day trial. Defendant did not show that he had insufficient time to prepare for the expert's testimony or that denying a continuance would prejudice him with respect to that testimony.

■■ Finally, defendant argues that the trial court should have granted his motion because he was unable to contact 10 witnesses (in addition to the 11 who did testify for him) by the trial date. In order to reverse the trial court's denial on this ground, defendant must show that he could have produced the witnesses for trial and that the witnesses would testify to

a material fact in the case. *Moore*, 324 Or at 410. Defendant did neither. The trial court made extensive findings on the record to justify its denial of defendant's motion, not the least of which was defendant's own vehement insistence on the day before trial that trial proceed as scheduled. The trial court did not abuse its discretion in denying defendant's motion. *State v. Beaty*, 127 Or App 448, 456, 873 P2d 385, *rev den* 319 Or 406 (1994).

■ Defendant next assigns error to the trial court's denial of his motions for judgment of acquittal and for new trial on the August 9 burglary count. He contends that the state failed to prove a statutory element of burglary, namely, unlawful entry. Entry into the residence on that occasion was effected by defendant's daughter; he did not enter the premises himself.

■ The state responds that the error is not preserved because defendant "expressly declined to argue the proposition that [he] * * * did not himself enter the residence." Defendant's attorney made the following argument to the trial court in his motions against the August 9 burglary count:

> "Burglary is a specific intent statute. There are not very many of them, but in order to commit burglary it has to be proved that the defendant intended to commit a crime when he entered the premises. *And I understand aid and abet theory with regard to entering the premises. I'm not arguing that.* The point is, in order to commit the crime of burglary you must have the intent to steal." (Emphasis added.)

However, defendant contends that this excerpt of his argument fails to tell the whole story. Defendant was charged with four offenses for the August 9 incident: first-degree burglary (for the unlawful entry with intent to commit theft and to violate the stalking order); second-degree theft (for removing the jewelry); violation of a stalking order (for the unlawful entry); and contempt (for violating a restraining order). During argument on the motion for judgment of acquittal with respect to the August 9 burglary, defendant argued that he could not have committed the offense because Rhonda had previously consented to give him the items taken. After his attorney concluded his argument on the burglary count, the

court denied the motion for judgment of acquittal on that count. Several minutes later during argument on his motions with respect to other counts, defendant's attorney made the following argument with respect to the bench-tried contempt charge that defendant violated a family abuse restraining order in connection with the August 9 incident:

> "Count 9 of 410, your Honor. This is the Contempt charge, relates to the very same incident where [defendant and his daughter] came over here to Grants Pass and [his daughter] went in the house. The allegation is that [defendant] entered [wife's] home. There's no evidence to support that at all. He had his daughter enter her home. He may have entered by proxy, but he did not enter."

Our cases on preservation have been criticized as inconsistent. *See State v. Doern,* 156 Or App 566, 577, 967 P2d 1230 (1998) (Landau, J., dissenting). However, one of the foundations of the preservation inquiry is whether the trial court had an opportunity to consider the issue and to avoid any alleged error. *Stranahan v. Fred Meyer, Inc.,* 153 Or App 442, 466 n 19, 958 P2d 854, *rev allowed* 328 Or 115 (1998). We conclude that defendant's argument on the contempt charge was insufficient to preserve his claim of error on the burglary charge. Defendant's trial attorney expressly disclaimed the argument now made on appeal with respect to the burglary count. The trial court then ruled on his motion specifically on the grounds argued. Although the argument on the contempt charge was made only a few minutes later during the same colloquy, it was argued and ruled on separately. The trial court could not reasonably be expected to divine that an expressly disclaimed argument should be considered on the burglary count after defendant's motion with respect to that count had already been fully argued and decided. It is evident that trial counsel believed that defendant's failure to enter the premises during the August 9 incident was relevant to the contempt charge but not dispositive on the burglary count. The trial court should not have been required to guess otherwise. The trial court did not have an opportunity to consider the issue now claimed as error and to avoid the alleged error at any relevant time. Nor is the claimed error apparent on the face of the record. *See State v. Farmer,* 317 Or 220, 224, 856 P2d 623 (1993). Therefore, it is

not adequately preserved for appeal, and we decline to consider it.

■ We turn next to the state's cross-appeal. The state assigns error to the trial court's refusal to count the 8:00 a.m. burglary on July 30 as criminal history for the 10:00 a.m., July 30 and the August 9 burglary convictions. However, the state filed a cross-appeal only in the August 9 case (trial court number 96CR0410). We therefore do not consider its first assignment of error, which challenged the sentence for the second July 30 burglary (trial court number 96CR0411). We review for error of law. *State v. Hurst*, 152 Or App 716, 718, 955 P2d 338 (1998).

Although the parties agreed that the earlier July 30 burglary should be sentenced at gridblock 8-I on the criminal history scale, the trial court concluded that it could not enhance defendant's criminal history for the second burglary committed that morning in sentencing defendant for the August 9 burglary. The court agreed with defendant that both July 30 burglaries arose out of the same criminal episode. The court also believed that its conclusion was bolstered by the fact that the offenses were consolidated for trial.

In *State v. Bucholz*, 317 Or 309, 855 P2d 1100 (1993), the Supreme Court held that a defendant's criminal history can be enhanced by a conviction based on a concurrently sentenced offense provided that the offenses do not arise from "the same transaction or series of specifically connected transactions." *Id.* at 315. The phrase "same act or transaction" is synonymous with the term "criminal episode." *State v. Boyd*, 271 Or 558, 565-66, 533 P 2d 795 (1975). The latter term is defined in ORS 131.505(4) as "continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective."

■ The trial court was influenced by the state's motion to consolidate all of the charges against defendant for trial. In that motion, the state employed language from the consolidation statute to the effect that the offenses were: (1) of the same or similar character, ORS 132.560(1)(b)(A); and

(2) were based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. ORS 132.560(1)(b)(C). However, the state did not allege the alternative statutory ground that the offenses were "[b]ased on the same act or transaction." ORS 132.560(1)(b)(B). The fact that criminal charges are consolidated for trial does not necessarily mean that they arise from a single criminal episode. *State v. Flower*, 128 Or App 83, 86-87, 874 P2d 1359, *rev den* 319 Or 572 (1994).

In this case, defendant entered the victim's residence at 8:00 a.m. on July 30, using an unlocked door. He left shortly thereafter, returned to the location where his car had broken down and worked on the car. He returned to the victim's residence at 10:00 a.m., pushed past her in the doorway, verbally harangued her, and refused to leave until she threatened to call the police. We agree with the state that defendant's actions constituted two discrete decisions to commit separate entries and therefore to commit separate offenses. *See State v. Hathaway*, 82 Or App 509, 515, 728 P2d 908 (1986), *rev den* 302 Or 594 (1987) (two drug deliveries a few hours apart to the same undercover agent did not constitute a single criminal episode); *State v. Sparks*, 150 Or App 293, 297, 946 P2d 314 (1997), *rev den* 326 Or 390 (1998) (three sequential burglaries of rooms in the same motel held to be separate criminal episodes).[1]

Accordingly, the trial court erred in declining to count the burglary convictions arising from the July 30 incidents as two separate person felonies in determining defendant's criminal history score when sentencing him for first-degree burglary in connection with the August 9 incident. Defendant should have been sentenced on that conviction

---

[1] Defendant relies on *State v. Seals*, 113 Or App 700, 833 P2d 1344 (1992), in support of his argument that the July 30 burglaries constituted a single criminal episode. The opinion in *Seals* states that the charges resulted from "what the prosecutor denominated a 'crime spree' during the evening of August 4, 1990." 113 Or App at 702. However, the court did not formally analyze the relationship among those offenses. The court and the parties presumed that the offenses comprised a single episode in addressing the issue for decision in *Seals*, which was whether an offense committed during a single criminal episode that gives rise to multiple convictions may be used as criminal history in relation to other offenses committed in the same episode.

after counting both of the other burglary convictions separately.

Affirmed on appeal. Vacated and remanded on cross-appeal for resentencing on count 1, case no. 96CR0410; otherwise affirmed.