Argued and submitted June 28, reversed and remanded for entry of judgment
granting post-conviction relief November 24, 2004

# LLOYD HUBERT WILLIAMSON,
*Appellant,*

*v.*

# Robert SCHIEDLER,
Superintendent,
Two Rivers Correctional Institution,
*Respondent.*

CV 011659; A119549

101 P3d 364

Irene B. Taylor, Deputy Public Defender, argued the cause for appellant. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

WOLLHEIM, J.

**WOLLHEIM, J.**

Petitioner appeals a judgment dismissing his petition for post-conviction relief. He argues that his trial counsel was inadequate because, at sentencing, counsel failed to object to petitioner's sentence on the ground that the sentence violated the 200 percent rule. OAR 213-012-0020(2)(b). We review the post-conviction court's judgment for errors of law and for evidence to support its findings, *Smart v. Maass*, 148 Or App 431, 434, 939 P2d 1184, *rev den*, 326 Or 62 (1997), and reverse.

Petitioner was indicted for (1) one count of manufacture of a controlled substance (MCS), ORS 475.992(1)(b); (2) one count of delivery of a controlled substance (DCS), ORS 475.992(1)(b); (3) two counts of possession of a controlled substance (PCS), ORS 475.992(4)(b); and (4) 17 counts of being a felon in possession of a firearm, ORS 166.270. The indictment further alleged that the MCS, DCS, and PCS counts were commercial drug offenses, based on evidence that petitioner possessed over $300 in cash, packaging materials, manufacturing paraphernalia, and unlawfully possessed firearms. ORS 475.996(1)(b).[1]

A jury convicted petitioner on all of the MCS, DCS, and PCS counts and on eight of the 17 felon in possession of a firearm counts. In finding petitioner guilty of the MCS, DCS, and PCS offenses, the jury returned a special verdict, making specific findings that petitioner possessed over $300 in cash, packaging materials, manufacturing paraphernalia, and unlawfully possessed firearms. The sentencing court ordered petitioner to serve 26 months on the MCS conviction; 26 months on the DCS conviction; 12 months each on the two PCS convictions; and 12 months on each of the eight convictions for being a felon in possession of a firearm. The sentencing court specifically found that petitioner's DCS conviction "created a risk of causing greater or qualitatively different loss, injury or harm to a different victim than was caused or threatened by the other offenses." *See* ORS 137.123(5).

---

[1] ORS 475.996 requires that the state prove at least three of 11 enumerated factors in order to convict a defendant of a commercial drug offense. Here, the state alleged and proved those four factors.

Accordingly, the sentencing court ordered petitioner to serve the MCS and DCS sentences and one of the eight felon in possession of a firearm sentences consecutively to each other, but ordered the rest of the sentences to run concurrently. Thus, petitioner's sentence totaled 64 months. The sentencing court made no findings as to why it ordered the felon in possession of a firearm sentence to be served consecutively, and trial counsel made no objection.

In his petition for post-conviction relief, petitioner argued that his trial counsel was inadequate because trial counsel failed to object to the sentence imposed by the court as violating the 200 percent rule. OAR 213-012-0020(2)(b). The post-conviction court rejected petitioner's argument, concluding that the 200 percent rule was inapplicable because "the crimes did not arise out of one single criminal episode and did not arise from the same continuous and uninterrupted course of conduct." Thus, the post-conviction court found that trial counsel was not inadequate.

Petitioner argues that the post-conviction court erred in determining that his sentence did not violate the 200 percent rule. Specifically, petitioner argues that, because he was sentenced to 26 months on the primary offense and because his conviction for being a felon in possession of a firearm was part of the same criminal episode as the other offenses, the maximum sentence he could have received was 52 months. Thus, petitioner argues, because trial counsel did not make that argument to the sentencing court, trial counsel was constitutionally inadequate. The state responds, first, that petitioner's claim is moot since he has been released from prison and is currently serving his term of post-prison supervision (PPS). Second, the state argues that the felon in possession of a firearm convictions were not part of the same criminal episode. The state reasons that, where the jury found that petitioner also possessed over $300, manufacturing paraphernalia, and packaging materials, it was not necessary for the jury also to have found that petitioner unlawfully possessed firearms in committing his drug offenses.

■ We first address the state's argument that petitioner's claim is moot because he has been released from

prison and is now serving his term of PPS. In order for a matter to be a justiciable controversy, a decision in the matter has to "have some practical effect on the rights of the parties to the controversy." *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993). In *Baty v. Slater*, 161 Or App 653, 984 P2d 342 (1999) *(Baty I)*, *adh'd to on recons*, 164 Or App 779, 995 P2d 1176 *(Baty II)*, *rev den*, 331 Or 191 (2000), we considered whether the petitioner's appeal from the post-conviction court's dismissal of his petition for post-conviction relief was moot because the petitioner had been released from prison and was serving his term of PPS. Basing our decision on the doctrine of collateral consequences, we stated:

> "For guideline offenders, OAR 213-005-0002(3) provides that the term of post-prison supervision commences upon completion of the offender's prison term. The earlier the term of imprisonment ends, the earlier the term of post-supervision *both* begins *and ends*. Therefore, * * * a correct determination of plaintiff's entitlement to credit for time served on his probationary sentence against the term of incarceration on his revocation sentence *does* directly affect the overall length of that sentence, including post-prison supervision. For that reason, our decision on the merits would have a practical effect on the rights of the parties and plaintiff's appeal is not moot."

*Baty I*, 161 Or App at 656-57 (emphasis in original).

The state moved for reconsideration of our decision in *Baty I*, but we adhered to that decision. *Baty II*, 164 Or App at 782. In doing so, we rejected the state's arguments that, under OAR 213-005-0003, an offender is required to "serve the term of supervision in the community," and that an offender cannot begin serving the term of PPS while still in prison. *Baty II*, 164 Or App at 781-82. We held that OAR 213-005-0003 only "establishes post-prison supervision administrative responsibilities," and that OAR 213-005-0002 determines when the term of PPS actually commences; it commences when the term of imprisonment is *legally completed*. *Baty II*, 164 Or App at 782.

The state now asks us to overrule our decisions in *Baty I* and *II*, pointing us to *United States v. Johnson*, 529 US 53, 120 S Ct 1114, 146 L Ed 2d 39 (2000). In *Johnson*, the United States Supreme Court was presented with a similar

question, namely, whether a defendant who had been incarcerated for a longer period than he legally should have been incarcerated could be given credit for that extra time served towards his supervised release term. The Court examined language in the Federal Sentencing Guidelines stating that supervised release begins when an individual "is released from imprisonment." *Id.* at 57. Based on the plain language of the Federal Sentencing Guidelines, the Court held that the period of supervised release does not begin until a defendant is actually released from prison; "[t]o say respondent was released while still imprisoned diminishes the concept the word intends to convey." *Id.* The state argues that, consistently with the Court's decision in *Johnson*, any decision in this case lacks practical effect on petitioner's rights because, regardless of any error in the imposition of his prison terms, his term of PPS began on the date he was actually released from prison.

The language used in the Federal Sentencing Guidelines is different from the language used in the Oregon Sentencing Guidelines. Under the Federal Sentencing Guidelines, supervised release begins *only* when an individual is released from imprisonment. Under the Oregon Sentencing Guidelines, the term of PPS begins "upon completion of the offender's prison term." OAR 213-005-0002. If the Oregon Sentencing Guidelines used the same language as the federal guidelines, we would agree that *Johnson* would be persuasive. Because the language of the two sentencing guidelines schemes is not the same, however, the result in this case is not the same as in *Johnson*. As stated in *Baty I* and *II*, the completion date of an offender's prison term is the date the term is "legally completed." *Baty II*, 164 Or App at 782. Petitioner's case is not moot.

Turning to the merits, we address petitioner's argument that his trial counsel was inadequate for failing to argue that petitioner's sentence violated the 200 percent rule. In order to establish that trial counsel was inadequate, petitioner must show, "by a preponderance of the evidence, facts demonstrating that trial counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result." *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991).

■ We first consider whether trial counsel failed to exercise professional skill and judgment in not arguing to the sentencing court that petitioner's sentence violated the 200 percent rule. OAR 213-012-0020(2)(b) provides, in part, that

> "[t]he total incarceration term of the consecutive sentences, including the incarceration term for the primary offense, shall not exceed twice the maximum presumptive incarceration term or the prison term defined in OAR 213-008-0005(1) imposed pursuant to a dispositional departure of the primary sentence except by departure as provided by OAR 213-008-0007."

Although this requirement is not mentioned in the rule, in order for the 200 percent rule to apply, petitioner's convictions must have been part of a single criminal episode. *State v. Miller*, 317 Or 297, 305-06, 855 P2d 1093 (1993). The term "criminal episode" is a term of art and is defined by ORS 131.505(4) as "continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective."

■ In *State v. Fore*, 185 Or App 712, 717, 62 P3d 400 (2003), we determined that the phrase "same act or transaction" as used in ORS 132.560(1)(b)(B), the permissive joinder statute, is synonymous with the phrase "same criminal episode." Accordingly, the test used to determine what constitutes a "same act or transaction" also applies to determine what constitutes a "same criminal episode." *Fore*, 185 Or App at 717. " '[T]wo charges arise out of the same act or transaction if they are so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge.' " *Id.* (quoting *State v. Fitzgerald*, 267 Or 266, 273, 516 P2d 1280 (1973)). It follows that two charges are part of the same criminal episode " '[i]f a complete account of one charge necessarily includes details of the other charge[.]' " *Id.* (quoting *State v. Boyd*, 271 Or 558, 566, 533 P2d 795 (1975)).

Given the way that this case was pleaded and proved, a complete account of the charges for manufacturing, delivery, and possession *necessarily* includes details of the felon in possession of a firearm charges in order to make the

controlled substances counts commercial drug offenses. ORS 475.996(1)(b)(C). Not only was unlawful possession of a firearm alleged in the indictment on the manufacturing, delivery, and possession counts, but the jury was asked to make specific findings that petitioner unlawfully possessed firearms in connection with those crimes, which the jury did. *See State v. Bush*, 174 Or App 280, 290-91, 25 P3d 368 (2001), *rev den*, 334 Or 491 (2002) ("same act or transaction" language in indictment did not compel trial court to find that the offenses occurred during the "same criminal episode" when the jury did not make specific findings to that effect). Thus, a complete account of the commercial drug offenses cannot be made without relating details of the facts supporting the felon in possession of a firearm charges.

The state argues that a complete account of the drug charges can be given without including the details of the felon in possession of a firearm charges because the jury could have convicted petitioner of the commercial drug offenses without making a specific finding that he unlawfully possessed a firearm. However, simply omitting the fact that the jury found that petitioner unlawfully possessed firearms as part of the commercial drug offenses would not provide a *complete* account of the charges. *But see Bush*, 174 Or App at 291 (disregarding "same act or transaction" language in indictment was not error because the indictment still alleged complete offenses).

It follows, then, that the charges against petitioner occurred in the same criminal episode and that the 200 percent rule applied. The maximum prison term petitioner could have received was 52 months. There were no risks to petitioner's case in making such an objection, and the potential benefits, if successful, would have meant a 12-month reduction in petitioner's incarceration. *See Burdge v. Palmateer*, 187 Or App 295, 301, 67 P3d 397, *rev allowed*, 336 Or 125 (2003) (trial counsel was inadequate for not raising objections where objection would not have had any risk to petitioner and had substantial potential benefits). Therefore, we conclude that reasonably competent defense counsel would have objected that petitioner's sentence violated the 200 percent rule. Trial counsel failed to do so and, thus, "failed to exercise

reasonable professional skill and judgment[.]" *Trujillo*, 312 Or at 435.

■ Petitioner still must show that he was prejudiced by trial counsel's inadequacy. In order to show prejudice, petitioner must show that trial counsel's ineffectiveness had a *"tendency to affect the result* of the prosecution * * *." *Lichau v. Baldwin*, 333 Or 350, 359, 39 P3d 851 (2002) (emphasis in original). As explained before, our decisions in *Baty I* and *II* establish that petitioner's term of PPS began on the date he legally completed his prison sentence. Trial counsel's error thus had the effect of making petitioner serve a longer incarceration term and a longer overall sentence than he would otherwise be legally required to; petitioner's prison term should have ended and his term of post-prison supervision should have began to run 52 months after he was incarcerated, 12 months before the date it actually did. Therefore, petitioner is entitled to post-conviction relief.

Reversed and remanded for entry of judgment granting post-conviction relief.