Argued and submitted on February 27, remanded for resentencing;
otherwise affirmed April 30, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DANNY CHARLES MARSHALL,
*Defendant-Appellant.*

Clatsop County Circuit Court
051061; A131110

183 P3d 241

Eric Johansen, Senior Deputy Public Defender, argued the cause for appellant. With him on the brief were Ingrid Swenson, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Jamie K. Contreras, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Brewer, Chief Judge, and Schuman, Judge, and Deits, Judge pro tempore.

BREWER, C. J.

**BREWER, C. J.**

Defendant pleaded guilty to two counts of robbery in the second degree, one count of kidnapping in the second degree, and one count of assault in the third degree. Defendant was sentenced to concurrent 70-month prison terms on the robbery counts, ORS 137.700(2)(a)(R); a 70-month term of imprisonment on the kidnapping count, ORS 137.700(2)(a)(I), with 40 months of that sentence to be served consecutively to the robbery sentences; and a 14-month prison term on the assault conviction, to be served consecutively to the other sentences. On the assault conviction, the court sentenced defendant to a presumptive prison term under grid block 6-D of the sentencing guidelines. The total incarceration term was 124 months. On appeal, defendant asserts that the court erred in failing to shift to grid block 6-I when it imposed a consecutive sentence on the assault conviction. OAR 213-012-0020(2)(a)(B). The state concedes that the sentencing court erred and, as explained below, we accept that concession. However, the state argues that the error was harmless. We remand for resentencing and otherwise affirm.

On December 2, 2004, the victim, S, was working as a bartender at the Labor Temple in Astoria. After the last customer left the bar that night, S began to close the bar. Two men, defendant and his cohort, Brown, entered the bar. The men had covered their faces, were wearing dark clothes, and were both armed with weapons. One man pointed a gun at S's head while the other man clicked a stun gun, and the men instructed her to take them "to the safe." S told them that she did not have access to the safe, and the men responded that they would blow her head off if she did not take them to the safe. The men tried to pry open the cash register, but they could not open it. S opened the lottery and poker tills for them, and she also opened the main till. The men told S that they would kill her if she did not give them all of the money. She complied, giving the men approximately $6,000. S was paralyzed by fear, and she believed that she was going to die.

While events unfolded, M, a regular customer of the bar, came "blazing" in with another man, E. E immediately

turned around and ran out of the bar, but M tried to fight defendant and Brown. The men fought M to the ground, and they repeatedly stunned him with the stun gun. Eventually the robbers left, and help arrived.

■ Defendant and Brown were apprehended and charged with several felonies. Defendant pleaded guilty to four lesser-included offenses. The parties left sentencing to the court. The court heard testimony from S and other witnesses, including defendant's daughter, and then imposed the following sentences:

> "Although there were two separate victims, [S] and [M], what we really had was a single robbery. And so the Court will follow Ballot Measure 11 as to Count 2 and commit each of you [defendant and Brown] to the legal and physical custody of the Department of Corrections for a period of 70 months. Those sentences [are] to be served concurrently with the sentences imposed in regards to Count 1 in each instance. And again, those are Ballot Measure 11 sentences.

> "Certainly, as—and then as to Count 3, Robbery does carry a very substantial sentence, but you gentlemen didn't just do a robbery. [M] came in during the course of the robbery, and you prevented him from leaving, as his friend was able to do. You interfered substantially with his liberty.

> "That is a separate crime, a separate victim, a separate criminal activity, a separate intent. While this was not a plan to kidnap someone as a separate planned crime in and of itself, it was a separate act with a different loss than certainly Count 1.

> "It's therefore appropriate that at least a part of the sentence be consecutive to the sentences imposed in Count[ ] 1 and Count 2, under [ORS] 137.123, subsection 5. As I indicated, it was a separate crime. This was done to prevent the summoning of help or police assistance and to prevent the interference with completion of the robbery crime.

> "It was a different victim, a different loss. It was the— the crime is the interference with [M]'s liberty, rather than the theft by use of force as the robberies. And again, the Ballot Measure 11 sentence is 70 months. Of that 70-month sentence, 40 months will be consecutive to the sentences

imposed in Counts 1 and 2, and 30 months will be concurrent with the sentences imposed in Counts 1 and 2.

"As to Count 4, and again not only did you interfere with [M]'s personal liberty by dragging him back through the door that he had entered, but once you got him in there, you assaulted him. And you assaulted him by using the stun gun. That is again, a separate crime with a separate criminal intent, not just to interfere with his liberty, but to cause him pain in order to gain compliance.

"And under [ORS] 137.123 that is available for a consecutive sentence, that being a different loss than kidnap.

"Under 6-D on the sentencing guidelines the presumptive sentence is 13 to 14 months, 6-C the presumptive sentence is 15 to 18 months. As I indicated earlier, it's the Court's intention that these gentlemen [defendant and Brown] be treated the same. And so in each instance I will commit you to the legal and physical custody of the Department of Corrections for a period of 14 months.

"\* \* \* \* \*

"Again, that sentence—you guys didn't need to do that. That sentence is consecutive to all of the other sentences."

In his sole assignment of error on appeal, defendant asserts that the sentencing court erred in failing to shift to grid block 6-I when it imposed a consecutive sentence on the assault conviction. OAR 213-012-0020(2)(a)(B).[1] The state acknowledges that the sentencing court erred. We agree. The court imposed the third-degree assault sentence consecutively to the sentences that it imposed on the other three counts. Neither of the exceptions to the "shift to column I"

___

[1] OAR 213-012-0020 provides, in part:

"(2)(a)  Subject to the provisions of subsection (b) of this section, the presumptive incarceration term of the consecutive sentences is the sum of:
"\* \* \* \* \*

"(B)  Up to the maximum incarceration term indicated in the Criminal History I Column for each additional offense imposed consecutively.
"\* \* \* \* \*

"(5)  Sections (1), (2), and (3) of this rule shall not apply to any sentence imposed on a dangerous offender under ORS 161.725 and 161.737, nor shall sections (2) and (3) apply to consecutive sentences imposed for crimes that have different victims."

rule applied here: Defendant was not sentenced as a dangerous offender, nor did the court sentence him for a crime that had a different victim from the kidnapping count. OAR 213-012-0020(5). Accordingly, the court erred in failing to sentence defendant in accordance with grid block 6-I. Had it done so, the presumptive sentence for the assault conviction would have been probation.[2]

■    The state nonetheless contends that the error was harmless because the court could and would lawfully have imposed the same total incarcerative term by different means. The state relies on our decision in *State v. Jenniches*, 187 Or App 658, 69 P3d 771, *rev den*, 335 Or 578 (2003). In *Jenniches*, we declined to exercise our discretion to review a sentencing error, because "we conclude[d] that the 'gravity of the error' was insignificant, as the court would have imposed the same sentence in any event." *Id.* at 663. We explained:

> "With respect to a sentencing error, a defendant is not prejudiced if it is clear that, on remand, the trial court lawfully could, and would, impose the same total term of imprisonment. *State v. Yarbor*, 133 Or App 360, 365, 891 P2d 7[0]3, *rev den*, 321 Or 51[3] (1995); *State v. Williams*, 133 Or App 191, 891 P2d 3, *rev den*, 321 Or 512 (1995). Under ORS 138.222(5), if we remand for resentencing, we must remand the entire case, and '[t]he sentencing court may impose a new sentence for *any* conviction in the remanded case.' * * * Thus, on remand the court could impose a new sentence for any or all of the 10 counts for which defendant was convicted. It also could order the concurrent sentences to run consecutively. *State v. Froembling*, 237 Or 616, 619, 391 P2d 390, *cert den*, 379 US 937 (1964). The court's sentencing authority on remand would be limited only in that the total incarcerative term could not exceed the original term, 117 months. *State v. Stockman*, 43 Or App 235, 242, 603 P2d 363 (1979).

> "As noted, under ORS 137.717 (1997), a sentencing court may impose either the statutory minimum set out in that statute or a departure sentence, whichever is longer; it may not impose both. [*State v.*] *Bagley*, 158 Or App [589,

---

[2] The court could have imposed a prison sentence on that conviction if it had, based on jury findings, found substantial and compelling reasons to impose a dispositional departure sentence (which it did not do).

595, 976 P2d 75 (1999)]. Under ORS 137.717(1)(c), defendant's mandatory minimum sentence would be 13 months' imprisonment for each offense. Because each conviction arose from an offense that was not part of a continuous and uninterrupted course of conduct, if the trial court had proceeded under that statute, it initially could have imposed each sentence consecutively, for a total prison term of 130 months. ORS 137.123(2).

"Because ORS 137.717(1)(c) authorizes a total prison term that is greater than the total term originally imposed, it follows that, on remand, the court could again impose a total term of up to 117 months' imprisonment. *Stockman*, 43 Or App at 242."

*Jenniches*, 187 Or App at 663-64 (emphasis in original).

Here, as in *Jenniches*, on remand, the sentencing court could impose the same aggregate incarceration term for defendant's four convictions. Despite the court's authority to impose a fully consecutive sentence on the kidnapping conviction, it ordered that only 40 months of the 70-month kidnapping sentence would run consecutively to the robbery sentences. The court then imposed the 14-month assault sentence consecutively to the other sentences because the assault was a separate crime from the kidnapping and robbery offenses that involved a separate criminal intent, "not just to interfere with [M's] liberty, but to cause him pain in order to gain compliance." As the state observes, while correcting its error on resentencing, the court also could increase to 54 months the portion of the kidnapping sentence imposed consecutively to the robbery sentences in order to achieve the same total incarcerative term. As in *Jenniches*, if the court here were to do so, the error would be rendered harmless. However, at that point, the parallel paths between this case and *Jenniches* diverge. In *Jenniches*, we concluded that it was

"certain that, on remand, the sentencing court *would* impose the same total term of imprisonment that it originally imposed. After filing his notice of appeal, defendant filed a motion in the sentencing court to modify the judgment. *See* ORS 138.083(1) ('The sentencing court shall retain authority irrespective of any notice of appeal * * * to delete or modify any erroneous term in the judgment.').

> Although the state conceded error, the court denied the motion, stating that 'the appropriate remedy is a resentencing *to effectuate the court's intention.'* * * * Based on that declaration, we conclude that, on remand, the court would impose the same total term of imprisonment."

*Id.* at 664 (emphases in original; footnote omitted).

That is not the circumstance here. We are confident, based on the sentencing court's findings on the record, that the court would impose consecutive sentences for the same offenses on remand. Even though the court must follow the "shift to I" rule in doing so, it still could impose a consecutive sentence on the assault conviction. And it is certainly possible that the court would impose the same aggregate incarceration term by increasing the length of the consecutive portion of the sentence on the kidnapping conviction. However, unlike the circumstance in *Jenniches*, it is not certain that the court would do so. The court's expressed intention to impose consecutive sentences on particular counts does not mean that it necessarily intended to impose a particular aggregate incarceration term on those consecutive sentences. Stated differently, nothing in the record compels the inference that, if the court had appreciated the effect of OAR 213-012-0020(2)(a)(B), it would not merely have sentenced defendant on the assault count in accordance with that rule without modifying the portion of the kidnapping sentence ordered to be served consecutively. If the court had followed that course without imposing a departure sentence on the assault conviction, defendant's aggregate prison term would have been substantially reduced. Thus, the error was not harmless. *See State v. Galvin*, 152 Or App 275, 279-80, 954 P2d 800 (1998) (holding that a 12-month probation sentence was not harmless error because the record did not indicate whether trial court would have imposed the same amount of "straight" jail time as was imposed as a condition of probation).

Remanded for resentencing; otherwise affirmed.