Argued and submitted June 27, remanded for resentencing; otherwise affirmed
December 24, 2008

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## GABRIEL GARCIA SOSA,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR9500236; A132901

199 P3d 346

Kristin A. Carveth, Deputy Public Defender, argued the cause and filed the supplemental brief for appellant. With her on the opening brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Janet A. Klapstein, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

Defendant appeals his convictions for first-degree rape, ORS 163.375, first-degree sodomy, ORS 163.405, and first-degree sexual abuse, ORS 163.427. He challenges only his sentences, arguing that the trial court incorrectly used the rape conviction to increase his criminal history score for purposes of sentencing him on the sodomy conviction. For the reasons that follow, we remand for resentencing and otherwise affirm.

In the summer of 1992, defendant was living with a woman and her two daughters, eight-year-old A and five-year-old T. On one occasion, defendant took A to the doorway of her mother's bedroom and removed her clothes. He then made her bend over and he placed his penis in her anal area. Defendant then forced A to lie on her mother's bed, and he raped her. Those two incidents resulted in defendant's convictions for sodomy and rape. In a separate incident, defendant touched T's vagina with his finger. That conduct gave rise to the conviction for sexual abuse.[1]

At sentencing, the state argued that the conviction on the rape count should be used to increase defendant's criminal history score[2] for purposes of his sentence on the sodomy count:

"So he [falls into sentencing guidelines grid block] 10-I, having no criminal history prior on this, on Rape in the First Degree.

---

[1] The incidents took place in 1992, before the effective date of ORS 137.700 (Measure 11). However, defendant was not tried until 2006, because he had fled the country after his arrest. Defendant was arrested in 2005 as he attempted to return to the United States. At the time of his sentencing in the present case, defendant also pleaded guilty to first-degree failure to appear, ORS 162.205, based on his having absconded. The trial court sentenced defendant on that conviction in the same proceeding as it sentenced the sex offenses and imposed a stipulated 11-month sentence to be served concurrently with the sentences imposed on the sex offenses. That sentence is not at issue on appeal.

[2] A defendant's criminal history score—together with the crime seriousness ranking—is used to calculate the sentence the court is to impose. OAR 213-004-0006. The score is determined by several factors, including the number and character of the offender's prior convictions. *Id.* The permissible *sentencing range* increases with every increase in a defendant's criminal history score.

"That would carry with it 60 months, with the post-prison supervision term pursuant to ORS 144.103. It reflects the difference between the 20-year maximum and the 60 months served.

"Now, Your Honor, on Count 2 I am asking the Court to make the findings that are laid out on the—bottom of page 2 of the sentencing order. And it is my belief and our firm assumption that the defendant is guilty of a separate act by that Sodomy, in that he after the one act of anal intercourse under the doorway as the jury heard, there was a moment in time period to reflect, and a separate act of going over to the bed * * * and raping her vaginally.

"And it is the State's position that that is a separate act and thereby can be sentenced consecutively because it involves a unique injury, a separate harm, and is a violation of a completely different statutory provision under ORS 161.067. * * * [O]ur research indicates that as long as the Court makes the findings that are in page 2 of the sentencing order, that this is a separate act with that opportunity to pause and reflect and renounce further conduct before he chose to go on and commit the vaginal penetration; that this would, indeed, be a separate act subject to a separate grid escalation up to a 10-D.

"If you do not so find, this would become a 10-I as well."

The trial court sentenced defendant in accordance with the state's recommendation, placing defendant in grid block 10-I for the rape conviction; then, counting that conviction in defendant's criminal history, the court placed defendant in grid block 10-D for purposes of the sodomy conviction. Ultimately, the trial court imposed an incarceration term of 60 months on the rape conviction, 110 months on the sodomy conviction, and 40 months on the sexual abuse conviction, all to be served consecutively for a total sentence of 210 months. In the judgment—in terms that appear related to its imposition of consecutive sentences—the court recited:

"This sentence under count 2 is ordered consecutive to count 1 upon a finding that the act of Sodomy upon which the defendant was found guilty was a separate act from the act of Rape upon which he was found guilty. The evidence

proved that the defendant completed the act of anal penetration, had the opportunity to pause and reflect on his conduct and renounce that further conduct, but thereafter, proceeded to an act of vaginal penetration separate and distinct from the act of Sodomy which he caused a qualitatively different and unique injury to the victim, [A]. Moreover, pursuant to ORS 161.067, defendant's conduct is violative of two separate statutory provisions[,] requiring proof of an element the other does not."

Defense counsel raised no objections at sentencing.

On appeal, defendant argues that the trial court erred in using his rape conviction to enhance his criminal history score on the sodomy conviction. He acknowledges that he did not preserve the claim of error in the trial court, but urges this court to exercise its discretion to address the claimed error as an error apparent on the face of the record. *See* ORAP 5.45(1).[3] The state concedes that, under *State v. Bucholz*, 317 Or 309, 855 P2d 1100 (1993), and *State v. Miller*, 317 Or 297, 855 P2d 1093 (1993), the trial court erred, but argues that we should not exercise our discretion to address the error.

■■ Initially, we agree with the state and accept its concession that the trial court erred. Under the sentencing guidelines—both as they existed at the time of defendant's crimes and currently—if two convictions stem from the "same criminal episode," one conviction may not be used to enhance the defendant's criminal history score for purposes of sentencing the second conviction. *See, e.g., State v. Yashin*, 199 Or App 511, 514, 112 P3d 331, *rev den*, 339 Or 407 (2005) ("[I]f a defendant is convicted of two crimes in one proceeding and a court pronounces sentence on the first conviction seconds before calculating the sentence on the second, then the first conviction may be used to calculate the defendant's criminal history on the second conviction. There is one caveat:

---

[3] ORAP 5.45(1) provides, in part, that

"[n]o matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, provided that the appellate court may consider an error of law apparent on the face of the record."

Only convictions that arose out of separate 'criminal episodes' count as part of the defendant's criminal history for sentencing purposes.").

The record in this case demonstrates that defendant committed the rape and sodomy as part of the same criminal episode. Crimes arise from the same criminal episode when they are part of "continuous and uninterrupted conduct that * * * is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective." ORS 131.505(4). *See State v. Knight*, 160 Or App 395, 403, 981 P2d 819 (1999) (recognizing ORS 131.505(4) definition of "criminal episode" as appropriate to use in assessing whether convictions arise out of separate criminal episodes under *Bucholz*). Here, defendant sodomized A in the doorway and immediately thereafter raped her on the bed. Those acts were uninterrupted conduct that were joined in time and place and were directed toward the accomplishment of a common criminal objective of compulsion and sexual gratification. The crimes did not arise out of separate criminal episodes. As a result, the trial court erred in using defendant's conviction on the sodomy charge to enhance his criminal history score from an "I" to a "D" for purposes of imposing sentence on the rape conviction.

Moreover, the error was "an error of law apparent on the face of the record." ORAP 5.45(1). To constitute error apparent or "plain error," the error must (1) be an error of law, (2) be not reasonably in dispute, and (3) appear on the face of the record. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). Here, the error meets all three criteria, and the state does not argue otherwise. We turn, then, to whether we should exercise our discretion to address the error.

We exercise our discretion to address an unpreserved claim of error "with utmost caution." *State v. Fults*, 343 Or 515, 522, 173 P3d 822 (2007). Factors relevant to that inquiry include the nature of the case, the competing interests of the parties, the gravity of the error, and the ends of justice in the particular case. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 823 P2d 956 (1991). Regarding sentencing issues, we also consider whether a defendant encouraged the trial court's imposition of the erroneous sentences, the possibility

that the defendant made a strategic choice not to object to the sentences, the role of other sentences in the case, and the interests of the judicial system in avoiding unnecessary and repetitive sentencing proceedings. *Fults*, 343 Or at 523.

Our decision to address similar unpreserved sentencing claims of error in other cases convinces us that we should exercise our discretion to do so in this case. In *State v. Lundstedt*, 139 Or App 111, 911 P2d 349 (1996), we exercised our discretion to address an unpreserved claim that the trial court had erred in failing to apply the so-called "shift to column I" rule in the sentencing guidelines. In *Lundstedt*, the state conceded that the error was apparent on the face of the record, but argued that "any mistake was minor" and that "a departure sentence could easily have been imposed on either sentence or both sentences." *Id.* at 114. Considering the *Ailes* factors, we chose to exercise our discretion, noting, "We particularly reject the state's contention that the error here, which may have resulted in up to four months' additional incarceration, was not of sufficient gravity to warrant our discretionary review." *Id.* In *State v. Cleveland*, 148 Or App 97, 939 P2d 94, *rev den*, 325 Or 621 (1997), the trial court erroneously imposed two "firearm minimum" sentences. In choosing to correct the unpreserved plain error, we rejected the state's argument that we should not correct the error because the trial court could have arrived at the same total sentence through lawful means. *Id.* at 100.

More recently, in *State v Marshall*, 219 Or App 511, 183 P3d 241 (2008), we addressed a preserved "shift to column I" error. The state conceded the error, but argued—as it did in *Cleveland*—that "the error was harmless because the court could and would lawfully have imposed the same total incarcerative term by different means." *Id.* at 516. We rejected the state's argument because it was "certainly possible," but not "certain," that the court would impose the same sentence on remand. *Id.* at 518. *Cf. State v. Quintero-Martinez*, 220 Or App 497, 503, 188 P3d 350, *rev den*, 345 Or 318 (2008) ("[W]e are certain that, if we were to remand this case to the trial court, it would correct its error in a manner that leaves intact defendant's total aggregate sentence of 120 months.").

In this case, the state presents a number of arguments—some of which reprise the arguments it made in the cases just discussed—to support its position that we should not address the plain *Bucholz* error. We reject those arguments.[4] Defendant points out that the trial court's error resulted in an additional 50 months—over four years—of imprisonment. As in *Lundstedt* (which involved only a four-month mistake), the gravity of the error warrants correction. Moreover, as in *Marshall* and *Cleveland*, whether the trial court could have imposed, or might impose on remand, the same total number of months' incarceration is not "certain." Under those circumstances, we exercise our discretion to correct the error.[5]

Remanded for resentencing; otherwise affirmed.

---

[4] We also reject the state's argument that we should not exercise our discretion because defendant fled the jurisdiction pretrial. The cases that the state cites involving the "former fugitive rule"—*State v. Ristick*, 204 Or App 626, 131 P3d 762 (2006), and *State v. Lundahl*, 130 Or App 385, 882 P2d 644 (1994)—are inapposite and do not support the use of the rule in determining whether to exercise *Ailes* discretion.

[5] In a supplemental brief, defendant asserts that the trial court erred in imposing consecutive sentences under *State v. Ice*, 343 Or 248, 170 P3d 1049 (2007), *cert granted*, ____ US ____, 128 S Ct 1657 (2008). Because we remand for resentencing in light of the *Bucholz* error, we do not address defendant's unpreserved *Ice* claim. *See* ORS 138.222(5) (requiring remand of "entire case" for resentencing).