Argued and submitted September 23, remanded for resentencing; otherwise affirmed November 19, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DANIELLE ELIZABETH WELSH,
*Defendant-Appellant.*

Coos County Circuit Court
12CR0960; A153012

340 P3d 132

Stephanie J. Hortsch, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Leigh A. Salmon, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

SERCOMBE, P. J.

**SERCOMBE, P. J.**

Defendant appeals her conviction by a jury of criminal trespass in the second degree, attempted assault in the first degree, attempted assault of a public safety officer, and various other criminal charges, raising two assignments of error. She first contends that the trial court plainly erred in failing to enter a judgment of acquittal on the criminal trespass charge. Defendant asserts that no rational juror could find that the state proved a necessary element of that charge—that defendant entered or remained unlawfully on the premises at issue. Even if the evidence was insufficient on the criminal trespass charge, we decline to exercise our discretion to correct any error in the judgment because defendant could have objected to the sufficiency of the evidence and additional evidence could have remedied that objection. Defendant separately argues that the trial court plainly erred in imposing consecutive sentences on the assault charges without making the findings required under ORS 137.123(5). We agree that the failure to enter those statutory findings was plain error and exercise our discretion to correct that error. Accordingly, we remand the case for resentencing on the assault charges and otherwise affirm.

Defendant's criminal charges arose from her suspicious behavior in the front yards of several residences. In September 2012, an off-duty police officer confronted defendant in the front yard of his house. Defendant appeared to be lost and asked the officer "strange questions" about whether he knew certain people, owned a dog, and had lived there long. Defendant stated she was looking for her children and then told the officer, "Okay. I'm leaving." As she was leaving, Officer Kinney arrived at the scene in a marked patrol car. He initiated a conversation with defendant because she was "acting suspiciously, and leaving a yard that didn't belong to her." Kinney identified himself as a police officer, asked defendant if she was well, and inquired why defendant had been in the other officer's front yard. Defendant "seemed kind of upset" and told Kinney that he had "no valid reason to contact her." Defendant then walked away.

Kinney was concerned about defendant, but resumed his patrolling in that neighborhood. Very shortly thereafter, he observed defendant sitting on the sidewalk. Still later, Kinney saw defendant "in another yard." He drove around that general area, and returned to find defendant in yet another front "yard" of a single-family residential building that was enclosed by a cyclone fence. Kinney described defendant's reaction: "She saw me. And, basically, turned from walking towards the front door of the house to walking down the sidewalk to the gate on the fence to leave." Kinney left the patrol car and confronted defendant, who attempted to "push right past" him. Kinney told defendant she was not free to leave and placed his hand on her arm. Defendant then opened a folding knife and attempted to stab Kinney. Later, defendant screamed obscenities, threatened to kill Kinney, and struggled as Kinney arrested her.

Following her arrest, defendant was charged with second-degree criminal trespass, ORS 164.245; attempted assault of a public safety officer, ORS 163.208, ORS 161.405(2)(d); attempted first-degree assault, ORS 163.185, ORS 161.405(2)(b); and other crimes. Defendant did not move for a judgment of acquittal on any of the charges, and a jury convicted her of all counts.

On appeal, defendant first contends that the trial court plainly erred in entering a judgment of conviction for second-degree criminal trespass, because there was no evidence in the record to support that conviction. Under ORS 164.245(1), "[a] person commits the crime of criminal trespass in the second degree if the person enters or remains unlawfully *** in or upon premises." ORS 164.205(3)(a) defines the term "[e]nter or remain unlawfully" as "[t]o enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public or when the entrant is not otherwise licensed or privileged to do so[.]" Defendant argues that she did not "[e]nter or remain unlawfully" on the premises in question.

In most cases, approaching a front door and knocking is not a trespass because the home occupant implicitly consents to that intrusion. As we explained in *State v.*

*Ohling,* 70 Or App 249, 253, 688 P2d 1384, *rev den,* 298 Or 334 (1984):

> "Going to the front door and knocking was not a trespass. Drivers who run out of gas, Girl Scouts selling cookies, and political candidates all go to front doors of residences on a more or less regular basis. Doing so is so common in this society that, unless there are posted warnings, a fence, a moat filled with crocodiles, or other evidence of a desire to exclude casual visitors, the person living in the house has impliedly consented to the intrusion."

"The scope of a homeowner's implied consent to approach the home is limited to those acts reasonably undertaken to contact the residents of the home; such consent does not extend, for instance, to an exploratory search of the curtilage." *State v. Cardell,* 180 Or App 104, 108, 41 P3d 1111 (2002). Defendant asserts that she was walking toward the front door of the house with the implicit consent of the occupant of the house, and, therefore, her conduct was beyond the reach of ORS 164.245(1).

Defendant recognizes, however, that, because she did not move for a judgment of acquittal or otherwise preserve the issue of the sufficiency of the evidence to support a conviction for trespass in the second degree, she must show that any error in the entry of the judgment of conviction was plain error. *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court * * * provided that the appellate court may consider an error of law apparent on the record."). Although the state acknowledges that the evidence of "whether a trespass occurred is quite slim," it argues that "the evidence was not so obviously insufficient as to require the trial court to interject itself into the proceedings" and that, if the trial court did commit plain error, we should not exercise our discretion to correct the error.

An error is plain under ORAP 5.45 when: (1) the error is one of law; (2) the error is "apparent," in that the "legal point is obvious, not reasonably in dispute"; and (3) the error appears "on the record," such that "[w]e need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are

irrefutable." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). Even when those conditions are satisfied, we then must decide whether to exercise our discretion to correct the error. In *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991), the Supreme Court set out some of the relevant considerations in the exercise of that discretion, including

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the par-ticular case; how the error came to the court's attention; and whether the policies behind the general rule requir-ing preservation of error have been served in the case in another way * * *."

Other considerations include whether the defendant in some way encouraged the trial court to make the error; whether the defendant made a strategic choice not to object; and whether the error could have been remedied if raised below. *State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007).

Guided by the considerations in *Ailes* and *Fults*, we have, in certain circumstances, exercised our discretion to review a plainly erroneous judgment of conviction. In *State v. Reynolds*, 250 Or App 516, 524, 280 P3d 1046, *rev den*, 352 Or 666 (2012), for example, we chose to review a plainly erroneous judgment of conviction because

> "the irrefutable fact of [the] defendant's lack of guilt distin-guishe[d] [the] case from the more common scenario of an unpreserved claim as to the sufficiency of the evidence—situations where the deficiency in proof is happenstance, where not all of the evidence that could be adduced was introduced into the record."

We further explained that the "insufficiency of evidence could not have been cured by a contemporaneous objection." *Id.* at 523. That is, *Reynolds* was "not a case where, if the error had been timely raised, the state could have reopened its case and corrected the deficiency in its proof." *Id.*

But our more common approach—and the one that is appropriate here—is to not "invoke plain error review where a defendant has failed to move for a judgment of acquittal[.] * * * That is because the trial court has not, consistently with the purposes of preservation, been apprised of the issue

and given an opportunity to avoid the error by allowing supplemental evidence to be introduced." *Id.* at 521; *see also State v. Campbell*, 266 Or App 116, 120, 337 P3d 186 (2014) (declining to correct error in failing to acquit the defendant of charges because, if the defendant "had adequately raised his objection in the trial court, the court could have remedied the error by allowing the state to reopen its case to produce additional evidence").

Here, Kinney testified that he saw defendant in a fenced "yard," immediately after having observed defendant's presence in two other yards with no apparent or articulated purpose. Defendant's abandonment of her course of travel when she was spotted by Kinney suggests an illegitimate purpose in her occupation of the property. While Kinney did specify that he saw defendant on the "sidewalk" of the yard leading to the front door, it is not clear if that was the full extent of defendant's activities in the yard. It may be that a more full description of defendant's conduct would prove that she had engaged in unlicensed or unprivileged acts, such as searching the yard for her children, that were not "reasonably undertaken to contact the residents of the home" under *Cardell.* If so, defendant would have unlawfully remained upon the property under ORS 164.205(3)(a) during the time of the unlicensed conduct. Even if the state's evidence of trespass was insufficient, because any insufficiency of the evidence to show trespass plausibly might have been cured by a contemporaneous objection, we decline to exercise our discretion to correct any error in the entry of the judgment of conviction.

Defendant also contends that the court erred in failing to enter findings to justify the consecutive sentences on the first-degree attempted assault and attempted assault of a peace officer charges. Under ORS 137.123(5), a court "has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds" that the criminal offense for which a consecutive sentence is contemplated was "not merely an incidental violation * * * but rather was an indication of [the] defendant's willingness to commit more than one criminal offense" or that it "caused or created a risk of causing greater or qualitatively different

loss, injury or harm to the victim [or a different victim]." Here, the state concedes, and we agree, that the trial court erred in not making the required finding. Consecutive sentences are not appropriate because the two offenses arose from a continuous and uninterrupted course of conduct and from the same acts of the defendant directed to a single victim. The error is plain and correction of the error would not result in the same sentence.

The state also concedes that it is appropriate to correct that plain error because consecutive sentences could not be justified. When reviewing plain sentencing errors, considerations relevant to exercising discretion to correct error include "whether a defendant encouraged the trial court's imposition of the erroneous sentences, the possibility that the defendant made a strategic choice not to object to the sentences, the role of other sentences in the case, and the interests of the judicial system in avoiding unnecessary and repetitive sentencing proceedings." *State v. Sosa,* 224 Or App 658, 663-64, 199 P3d 346 (2008). Here, we agree with the state that we should exercise our discretion to correct the error. Plain error review would not undermine the purposes of the preservation rule because, if the matter had been brought to the trial court's attention, the trial court could not have made the necessary findings. *Compare State v. Bucholz,* 317 Or 309, 321, 855 P2d 1100 (1993) (declining to correct plain error in not making statutorily required findings because, "had the matter been called to the sentencing court's attention, applicability of [the statute] might easily have been established"). The sentencing error affects the duration of defendant's incarceration and the ending date for her post-prison supervision. The state has no interest in having defendant serve an unlawful sentence, and proper sentencing of defendant serves the ends of justice. The court's burden in reviewing and correcting the error is minimal; the error is most efficiently corrected by remand. Defendant had no plausible strategic reason not to object to the consecutive sentences.

Remanded for resentencing; otherwise affirmed.