Argued and submitted December 21, 2016; remanded for resentencing, otherwise affirmed April 5, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT LEE WRIGHT,
*Defendant-Appellant.*

Yamhill County Circuit Court
14CR02967; A158893

393 P3d 1192

Andrew D. Robinson, Deputy Public Defender, argued the cause for appellant. With him on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jamie Contreras, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Nani Apo, Assistant Attorney General.

Before Duncan, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

**DEVORE, J.**

Defendant was convicted of four counts of aggravated animal abuse in the first degree. He appeals, challenging the exclusion of evidence that he has an intellectual disability and that he has a character for gentleness toward animals. He contends that evidence was relevant to his mental state in committing the offenses. Defendant also challenges his sentences, arguing that the court erred in imposing upward durational departure sentences based on particular aggravating factors and further erred in calculating his criminal history score on two counts. We conclude that the trial court did not err in excluding a reference to defendant's intellectual disability and that exclusion of evidence of his character for gentleness was harmless, but we agree that the trial court erred in sentencing. Accordingly, we affirm defendant's convictions but remand for resentencing.

## I.  FACTS

Defendant drowned six cats that lived with him—Arial, Crystal, Suzie, Squirt, Patches, and Monkey Face. He filled a trash can half full with water and placed two cats inside the can. He held the lid down until the cats died. Then, he repeated the process for the remaining pairs of cats. Defendant was indicted by grand jury with six counts of first-degree aggravated animal abuse.

At trial, defendant did not dispute that he had drowned the cats, but he did dispute that he had acted maliciously. He argued during opening statement and closing argument, that he "put these cats down" because he was worried about being able to care for them.[1] One cat had a problem with its ear, and defendant believed that another cat had a throat problem that he thought was cancer. He was unable to afford their veterinarian bills; he feared that, if he let the cats run free, they would either be run over by a car or contract a disease; and he believed that he could not find them another home. That is, defendant contended that he thought he had no other alternative. Defendant sought to present the testimony of his neighbor Vaage, referring to

---

[1] Defendant did not testify at trial, but the investigating officer recounted defendant's explanation of events.

defendant's "intellectual disability" and his "character for gentleness to animals." Defendant argued that Vaage's testimony would be relevant to whether defendant acted with malicious intent—an element that the state was required to prove. The trial court concluded that the evidence was not relevant and excluded it.

Defendant was convicted on four counts of aggravated first-degree animal abuse for killing the healthy cats. He was acquitted on the two counts that related to the arguably ill cats. After finding substantial and compelling reasons, the court imposed downward dispositional but upward durational departure sentences of five years' supervised probation on each of the convictions.

In his first two assignments of error, defendant argues that the trial court erred in excluding, as not relevant, Vaage's reference to defendant's intellectual disability and character for gentleness toward animals. As to the testimony regarding defendant's intellectual disability, the state argues that defendant failed to establish that it was relevant to his intent because he did not show that there was a connection between his particular disability and his ability to think of alternatives, which was his theory of relevance. As to the testimony regarding defendant's character for gentleness toward animals, the state agrees that the court erred, but argues that any error was harmless.

Defendant also assigns error to two sentencing rulings. He acknowledges that those matters were not raised at trial and asks this court to review for plain error. First, defendant contends that the trial court plainly erred in relying on four aggravating factors to impose upward durational departure sentences. The state concedes that the court improperly relied on three of the factors, but the state argues that the court did not plainly err in applying the fourth factor, involving a "vulnerable victim." Consequently, the state contends that a remand is required for the trial court to decide whether to impose departure sentences based on that factor alone. Second, defendant argues that the trial court plainly erred in using his convictions on Counts 2 and 4 to enhance his sentences for Counts 5 and 6. The state

concedes that the court plainly erred in that respect and that a remand for resentencing is required.

## II.  EXCLUSION OF EVIDENCE

In relevant part, a person commits the crime of first-degree animal abuse if the person "[m]aliciously kills an animal." ORS 167.322(1)(a). "Maliciously," as used in ORS 167.322, means "intentionally acting with a depravity of mind and reckless and wanton disregard of life." ORS 167.322(3)(a). Those provisions required that the state prove that defendant killed the cats and that, when he did so, he was "intentionally acting with a depravity of mind and reckless and wanton disregard of life."

Although defendant acknowledged that he had killed the cats, he denied that he had done so maliciously. On appeal, defendant assigns error to the trial court's exclusion of two statements from Vaage—one a reference to defendant's intellectual disability and one a statement relating to his character for gentleness to animals. Defendant asserts that both were relevant to his mental state.

### A.  *Intellectual Disability*

At trial, defense counsel asked Vaage on direct examination, "Do you know why [defendant] felt the need to get rid of the cats?" The neighbor responded, "I went over there the day it was happening. I believe it was a Sunday. There were two police cars there. And I have kind of taken on a—taken [defendant] on as someone I want to go [to] bat for a[nd] defend because of his intellectual disability." The state objected to that testimony. Defendant argued to the trial court that the evidence was relevant to determining whether he had acted "in a depraved and wanton manner." He clarified that he was not seeking to introduce "any testimony as far as a mental disease diagnosed or anything like that." The trial court ruled that the testimony was irrelevant and instructed the jury to disregard the testimony.

Defendant contends that the trial court erred because evidence of defendant's intellectual disability was relevant to showing that defendant did not act with malice, "because it provided an alternative, exculpatory explanation

for his conduct in drowning the cats." Defendant explains that the evidence was relevant to his defense at trial that his actions were motivated by his inability to afford care or to find someone else to care for the cats and, more specifically, to his inability to think of an alternative to the actions he took. The state argues that, in order for the evidence to be relevant, defendant needed to provide evidence of a nexus between a particular disability and its identified effect on his ability to think of alternatives.

Under OEC 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." There is a low threshold for relevance. *State v. Lewis*, 352 Or 626, 635, 290 P3d 288 (2012). Even so, OEC 104(2) provides that, "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." Legislative Commentary to the Oregon Evidence Code explains, "'Subsection (2) recognizes that in some situations the relevance of an item of evidence depends upon the existence of a particular preliminary fact.'" Laird C. Kirkpatrick, *Oregon Evidence* § 104.02, 54 (6th ed 2013) (quoting commentary). Put another way, this means that the evidence in question "is relevant only if another fact—the *conditional fact*—is first proved." *State v. Jesse*, 360 Or 584, 597, 385 P3d 1063 (2016) (emphasis added).

In *Jesse*, the Supreme Court held that a trial court properly excluded a psychologist's testimony that it was "within the realm of possibility" that the defendant's family background, tendency to ruminate, or adjustment disorder caused him to make false confessions. *Id.* at 601-02.[2] That defendant, who was convicted of first-degree sexual abuse,

---

[2] Although *Jesse* involved the "helpfulness" of expert testimony to the jury under OEC 702, that inquiry is closely related to the relevance of the evidence. That rule provides:

"If scientific, technical or other specialized knowledge will *assist the trier of fact* to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

argued that evidence of his adjustment disorder was relevant to his defense that he did not touch the child with a culpable mental state. *Id.* at 597, 600. As the court explained:

> "Some expert testimony, like other forms of evidence, only conditionally relates to a fact in issue, meaning that it is relevant only if another fact—the conditional fact—is first proved. *State v. McNeely*, 330 Or 457, 462 n 5, 8 P3d 212, *cert den*, 531 US 1055 (2000). We mention that wrinkle here, because defendant proffered [the expert's] testimony about his adjustment disorder to provide an inference that defendant did not touch M with a culpable mental state. [The expert's] testimony would be relevant to that fact in issue only if a *conditional fact* was proved, that is, that defendant's adjustment disorder influenced him to make admissions that were not actual confessions of guilt. That conditional fact—like any other fact in issue—could be established by reasonable inferences, but not through speculation."

*Id.* at 597 (emphasis added). Defendant's expert had testified only that "it was within the realm of possibility" that defendant confessed out of stress due to his adjustment disorder. *Id.* at 601. The expert did not testify that the defendant's adjustment disorder could produce false confessions. *Id.* Nor did the expert provide any information from which a juror could reasonably infer that defendant's admissions were false. *Id.* The court concluded:

> "In sum, because defendant did not connect the facets of his adjustment disorder with the *conditional fact* that he wanted the jury to infer, the jury would have been left to speculate about the existence of a connection between that testimony and the issue of fact whether defendant touched M with a culpable mental state. It follows that the court did not err in excluding that testimony on the ground that it would not be helpful to the trier of fact."

*Id.* 601-02 (emphasis added).

OEC 702 (emphasis added). The Oregon Supreme Court has described that inquiry as whether the evidence "will *help* the trier of fact in deciding a disputed issue." *State v. Brown*, 297 Or 404, 409, 687 P2d 751 (1984) (emphasis added). As the court has further explained, "That aspect of helpfulness refers to the relationship—that is, the relevance—that expert testimony must bear to a fact in issue." *Jesse*, 360 Or at 596, 597 n 5 ("This court repeatedly has described relevancy as a component of the helpfulness analysis.").

In the case at hand, Vaage's testimony merely consisted of a general reference that defendant had an "intellectual disability."[3] Like the testimony in *Jesse* about an adjustment disorder, Vaage's statement that defendant had an intellectual disability, without more, was not relevant to defendant's mental state. Defendant did not offer admissible evidence, and did not make an offer of proof, of a connection between the intellectual disability and the alleged mental state, such as evidence that his particular intellectual disability could affect his judgment or his ability to think of other options for the cats. A factfinder could not reasonably infer from Vaage's general statement that defendant had an unspecified intellectual disability that defendant did not maliciously drown the cats. As in *Jesse*, defendant failed to offer proof of the necessary fact or nexus in order for the evidence of his intellectual disability to be relevant to whether he lacked the culpable mental state. Therefore, the trial court did not err by excluding Vaage's reference to "intellectual disability."

## B. *Character for Gentleness to Animals*

Defendant also contends that the trial court erred by excluding evidence of defendant's character for gentleness to animals on relevance grounds. Defense counsel had asked Vaage if he would have any concerns about allowing defendant to care for his own pets. The state objected based on relevance. Defense counsel argued, "So here, the state's alleging that he acted in a cruel manner. However, because of that, then we get to offer evidence as far as his gentle nature towards animals that's been observed by this witness." The trial court sustained the state's objection and explained:

> "If the issue had been whether he did or not, I might seriously consider what you were just saying, but that's not

---

[3] The trial court, in its ruling, also stated that the evidence was not admissible without expert testimony. Defendant argues that expert testimony was not required. The state asserts that the neighbor "did not identify a particular disability and, in any event, he was unqualified to do so." Because we conclude that the evidence was irrelevant because defendant failed to provide evidence of a connection between the assertion that he had an intellectual disability and a fact at issue in the case, we need not decide whether expert testimony would have been required. We assume without deciding that Vaage's lay testimony that defendant had an intellectual disability could be competent evidence of that fact.

an issue. The issue—he did it. It's his state of mind. And so he may have been the most loving person in the world in the past, but that doesn't make any difference. I mean, specifically what this jury has to decide is what was this Defendant's mental state when he drowned the cats."

On appeal, defendant asserts that his character for gentleness toward animals was relevant to his state of mind, because a person with that character trait would be less likely to act maliciously toward cats. OEC 404(2)(a) (evidence of defendant's character trait is admissible if it is "pertinent"). He argues that the error was not harmless because such evidence related to the central issue in the case, whether defendant acted maliciously, and therefore could have affected the verdicts. The state concedes that the trial court erred by excluding the evidence but argues that the error was harmless because there was no dispute that defendant had a gentle nature toward the cats before he killed them and because the character evidence would be duplicative of other undisputed evidence in the record.

We assume that the court erred as the state concedes and proceed to harmless error analysis. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (evidentiary error is not reversible if there is "little likelihood that the error affected the verdict"); OEC 103(1) (evidentiary error not reversible "unless a substantial right of the party is affected").

We conclude that any error was harmless because the evidence was indeed cumulative of other evidence of defendant's gentle nature toward his cats and of whether he acted maliciously. *Davis*, 336 Or at 33-34 (considering, in harmless error analysis, whether evidence was merely cumulative or duplicative of admitted evidence). For example, Vaage also testified that defendant "liked his cats. He loved his cats." Vaage testified that defendant, after killing the cats, said, "'I didn't want them to suffer like Arial[,]'" one of the sick cats. Another witness testified that one of the cats, Squirt, was defendant's best friend. Yet another witness testified that, when she visited the cats, she observed that "[t]hey were—he tried his best to take care of them." Each of those admitted statements more specifically pertains to defendant's nature toward the cats, and each bears

on whether defendant acted maliciously. We do not see any meaningful difference between Vaage's proffered comment about his willingness to allow defendant to care for his pets—a general indication of defendant's gentle character toward animals—and the more specific evidence, which was admitted, of defendant's demonstrated kind or loving treatment of his own cats. Thus, any error the court committed in excluding testimony on defendant's gentle character toward animals was harmless.

## III. SENTENCING

### A. *Durational Departure Sentences*

The trial court imposed upward durational departure sentences for each count based on the following four aggravating factors under OAR 213-008-0002(1)(b):

"(A)   Deliberate cruelty to victim.

"(B)   The offender knew or had reason to know of the victim's particular vulnerability, such as the extreme youth, age, disability or ill health of victim, which increased the harm or threat of harm caused by the criminal conduct.

"* * * * *

"(G)   The offense involved multiple victims or incidents. This factor may not be cited when it is captured in a consecutive sentence.

"* * * * *

"(I)   The offense resulted in a permanent injury to the victim."

The effect of the court's durational departure was to impose a five-year term of probation, rather than a three-year term, for each of the counts.

Defendant assigns error to the court's imposition of the departure sentences based on those factors, arguing that the court plainly erred by relying on those four factors, which defendant contends were inapplicable. The state concedes that the court improperly relied on three of those factors (*i.e.*, (A), (G), and (I)), because they were already captured as elements of the offense or in a consecutive sentence. The state further concedes that a remand is necessary for

the trial court to determine whether to impose the departure sentences on the remaining, "vulnerable victim" factor alone.

We accept the state's concession. *State v. Teeters*, 278 Or App 812, 813, 379 P3d 839 (2016) (accepting the state's concession that the sentencing court erred in imposing a departure sentence under OAR 213-008-0002). And, for the reasons expressed in *State v. Rudnick*, 268 Or App 125, 133, 341 P3d 211 (2014), we exercise our discretion to correct the error and remand for resentencing, at which point the court will have an opportunity to consider, in the first instance, the parties' arguments regarding the "vulnerable victim" factor.

B.  *Criminal History Score*

In his final assignment of error, defendant argues that the trial court plainly erred by recalculating defendant's criminal history score for the sentences on Counts 5 and 6 based on his convictions for Counts 2 and 4, relying on *State v. Sosa*, 224 Or App 658, 662, 199 P3d 346 (2008) (explaining that when "two convictions stem from the 'same criminal episode,' one conviction may not be used to enhance the defendant's criminal history score for purposes of sentencing the second conviction"). The state concedes error, but because we have already determined that we must remand the entire case for resentencing based on the court's reliance on the inapplicable departure factors, any error in this regard may be remedied at resentencing.

Remanded for resentencing; otherwise affirmed.